UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DENISE OLIVER,

                                 Plaintiff,                Case # 19-CV-443-FPG

v.                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

## INTRODUCTION

Plaintiff Denise Oliver brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act.  ECF No. 1.  The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).  ECF Nos. 8, 12.  For the reasons that follow, the Commissioner's motion is GRANTED, Oliver's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In April 2014, Oliver applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 100.  Her date last insured is December 31, 2017.  Tr. 14.  Oliver alleged disability since April 2014 due to severe anxiety, depression, right-shoulder pain, high cholesterol, and torn rotator cuff. Tr. 100.  On February 21, 2018, Administrative Law Judge Patricia M. French ("the ALJ") issued a decision finding that Oliver was not disabled.  Tr. 12-21.  On February 14, 2019, the Appeals

---

[1] "Tr." refers to the administrative record in this matter.  ECF No. 4.

Council denied Oliver's request for review.  Tr. 1-4.  This action seeks review of the Commissioner's final decision.  ECF No. 1.

## LEGAL STANDARD

### I.      District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted).

### II.     Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  If the

claimant does not have a severe impairment or combination of impairments, the analysis concludes

with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically

equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the

"Listings").  *Id.* § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing

and meets the durational requirement, the claimant is disabled.  If not, the ALJ determines the

claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental

work activities on a sustained basis, notwithstanding limitations for the collective impairments.

*See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits

him or her to perform the requirements of his or her past relevant work.  20 C.F.R. § 404.1520(f).

If the claimant can perform such requirements, then he or she is not disabled.  *Id.*  If he or she

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the

Commissioner to show that the claimant is not disabled.  *Id.* § 404.1520(g).  To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual

functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d

72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

The ALJ analyzed Oliver's claim for benefits under the process described above.  At step

one, the ALJ found that Oliver had not engaged in substantial gainful activity from the alleged

onset date through the date last insured.  Tr. 14.  At step two, the ALJ found that Oliver has severe

impairments of anxiety, depression, status post rotator cuff surgery, degenerative joint disease, degenerative disc disease, and status post anterior cervical discectomy and fusion in the cervical spine.  Tr. 14-15, 19.  At step three, the ALJ found that her impairments do not meet or medically equal any Listings impairment.  Tr. 15.

Next, the ALJ determined that Oliver retained the RFC to perform light work with additional restrictions.  Tr. 17.  At step four, the ALJ found that Oliver could perform her past relevant work as a small business owner.  Tr. 21.  Accordingly, the ALJ concluded that Oliver was not disabled through the date last insured.  *Id.*

## II.   Analysis

Oliver argues that the ALJ erred in crafting the RFC with respect to Oliver's (1) mental conditions, and (2) exertional capabilities.  The Court addresses each issue below.

### a.   Mental Conditions

In the decision, the ALJ acknowledged that Oliver has severe impairments of depression and anxiety.  Tr. 19.   Nevertheless, the ALJ found that these impairments only functionally restricted Oliver insofar as she was "limited to frequently (not constantly) interacting with the public and co-workers."  Tr. 17.

Oliver contends that, for two reasons, the ALJ's conclusion is erroneous.  First, the ALJ erred in her evaluation of consultative examiner Christine Ransom, Ph.D.  Second, the ALJ failed to adequately analyze Oliver's ability to deal with stress.

As to Dr. Ransom, Oliver asserts that the ALJ failed to incorporate certain functional restrictions that Dr. Ransom found, despite having afforded Dr. Ransom's opinion "great weight."  Tr. 20.  Dr. Ransom opined as follows:

> [Oliver] can follow and understand simple directions and instructions, perform
> simple tasks independently, maintain attention and concentration for simple tasks,

maintain a simple regular schedule and learn simple new tasks. *She will have mild difficulty performing complex tasks, relat[ing] adequately with others and appropriately deal[ing] with stress* due to major depressive disorder currently mild and generalized anxiety disorder currently mild.

Tr. 456 (emphasis added). Oliver argues that, aside from the one social limitation, the ALJ failed to incorporate into the RFC any of the other "mild" difficulties that Dr. Ransom identified.

The Court disagrees and finds that the ALJ reasonably interpreted and relied on Dr. Ransom's evaluation. Dr. Ransom diagnosed Oliver with "mild" depression and anxiety, which, in the parlance of the regulations, generally indicates that the condition does not significantly limit one's ability to do basic work activities. *See* 20 C.F.R. § 404.1520a(d) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe."). During the mental status examination, Dr. Ransom observed that Oliver was cooperative and socially appropriate; had coherent and goal-directed thought processes; was oriented to person, place, and time; had intact concentration and memory; and had average intellectual functioning. Tr. 455-56. Based on Oliver's history, subjective complaints, and the examination, Dr. Ransom found that her depression and anxiety caused, at most, mild difficulties in her ability to perform "complex tasks, relate adequately with others and appropriately deal with stress." Tr. 456.

Read in context, Dr. Ransom's statement that Oliver had a few "mild" functional difficulties should be understood to mean that Oliver had some minor, insignificant difficulties with certain work activities. *See Nesevitch v. Colvin*, No. 15-CV-935, 2016 WL 5717270, at *16 (N.D.N.Y. Sept. 30, 2016) (noting that phrases like "mild" or "moderate" must be construed in the context of the examination findings and patient history). Dr. Ransom's statement cannot be reasonably read to mean, as Oliver asserts, that Oliver was functionally *precluded* from performing those activities and limited to "simple, unskilled work." ECF No. 8-1 at 19. Oliver's interpretation of Dr. Ransom's evaluation is inconsistent with the normal mental status examination and other

findings described therein.  *See* Tr. 454-56.  Conversely, the ALJ's interpretation—that the "mild" difficulties Dr. Ransom identified did not translate into any functional limitations—is reasonable given Dr. Ransom's objective findings and Oliver's subjective history.  A mild difficulty is just that—one that is minor or inconsequential.

Thus, there is no inconsistency between Dr. Ransom's opinion that Oliver had some "mild" difficulties in a few, discrete areas and the ALJ's conclusion that those "mild" difficulties did not translate into functional limitations for purposes of the RFC.

For similar reasons, the Court is not persuaded by Oliver's argument that the ALJ erroneously analyzed her ability to deal with stress.  "Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work."  *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006).  An ALJ must specifically inquire into and analyze a claimant's ability to manage stress.  *Haymond v. Colvin*, No. 1:11-CV-0631 MAT, 2014 WL 2048172, at \*9 (W.D.N.Y. May 19, 2014).

Nevertheless, "even without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations."  *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019).  That is, courts reviewing an ALJ's evaluation of stress-based limitations do not demand an exhaustive analysis of the issue. *See Slattery v. Colvin*, 111 F. Supp. 3d 360, 374 (W.D.N.Y. 2015).  So long as the decision reveals that the ALJ considered and accounted for stress limitations—even if not in the most explicit terms—remand is not warranted.  *See Herb*, 366 F. Supp. 3d at 447; *Grega v. Berryhill*, No. 17-CV-6596, 2019 WL 2610793, at \*12 (W.D.N.Y. June 26, 2019).

Here, it is evident that the ALJ considered and accounted for Oliver's stress-related limitations. She relied upon Dr. Ransom's opinion to conclude that, generally, Oliver only had mild difficulty in appropriately dealing with stress and that Oliver's mental conditions did "not significantly interfere with [her] ability to function on a daily basis." Tr. 20. But the ALJ also specifically found that the record supported a greater limitation on social interaction because it "may be an anxiety trigger." *Id.* Oliver's contrary argument is grounded in her misinterpretation of Dr. Ransom's opinion. *See* ECF No. 8-1 at 20. The ALJ's decision demonstrates that she adequately analyzed Oliver's ability to manage stress and fashioned the RFC accordingly.

Therefore, remand is not warranted on either of the grounds Oliver raises.

### b.  Exertional Capabilities

Oliver argues that the ALJ erred in finding she could perform light work because the opinion of consultative examiner M. Bijpuria, M.D., was stale. The Court is not persuaded.

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Light work also requires "standing or walking for six hours total in an eight-hour workday with intermittent sitting." *Yildirim v. Comm'r of Soc. Sec.*, No. 18-CV-6098, 2019 WL 3074062, at *3 n.5 (W.D.N.Y. July 15, 2019).

Oliver contends that Dr. Bijpuria's opinion is defective because "there is no indication that he/she considered any evidence after December 2016." ECF No. 8-1 at 22. Oliver notes that she subsequently underwent surgery in her cervical spine, and therefore there is a variety of treatment notes, diagnostic imaging, and other evidence that Dr. Bijpuria did not consider.

By way of background, Oliver has a history of radiating pain and reduced range of motion in her left arm and shoulder. *See, e.g.*, Tr. 379, 387, 390. In March 2014, treating physician

Donald P. Douglas, M.D., diagnosed her with a partial rotator-cuff tear in her left arm and recommended surgery. Tr. 387. Samuel Balderman, M.D., a consultative examiner, reached a similar diagnosis in August 2014. Tr. 460. However, despite these diagnoses, the record does not indicate that Oliver sought or received treatment for these complaints in 2015 or most of 2016. It was not until late November 2016 that she sought treatment for acute neck and left-arm pain. *See* Tr. 505. Oliver received an MRI and was diagnosed with cervical disc herniations with cord compression and myelopathy. Tr. 647. In February 2017, Kevin J. Gibbons, M.D., performed cervical fusion surgery. Tr. 647-48.

One month after the surgery, Oliver stated that she was "doing very well," with improvement in the strength and feeling in her left arm. Tr. 650. A few months later, Oliver reported she was "doing generally well" and "overall the burning, tingling and pain in the left arm is substantially improved." Tr. 653; *see also* Tr. 618. Oliver still complained of "some slight presentation" of muscle spasms and inflammation in her left side. Tr. 653. On examination, Oliver had "a reasonable range of motion" in her cervical spine and "good power" in both arms. Tr. 654. Nurse Practitioner Kevin Cuddahee recommended physical therapy to treat the neck pain. *Id.*

In August 2017, Dr. Bijpuria conducted a medical evaluation, opining that Oliver could perform light work with additional restrictions on reaching, climbing, balancing, crawling, using machinery, and navigating hazards. Tr. 578-81. Dr. Bijpuria reached this conclusion based on the review of the evidence, which showed no consistent treatment for pain in the left arm, no evidence of motor weakness or severe arthritis, and no indication that Oliver required "intensive pain management" or other interventions. Tr. 575. However, Dr. Bijpuria does not appear to have reviewed the records relating to Oliver's surgery. *See* Tr. 573-75.

The ALJ gave "great weight" to Dr. Bijpuria's opinion, finding it consistent with the physical examination findings of Dr. Balderman (before the cervical surgery) and Dr. Kalsman (after the cervical surgery).  Tr. 19.

The Court cannot conclude that the ALJ erred by relying on Dr. Bijpuria's opinion. Granted, "[m]edical source opinions that are conclusory, stale, and based on an incomplete medical record may not be substantial evidence to support an ALJ finding," *Lesanti v. Comm'r of Soc. Sec.*, No. 19-CV-121, 2020 WL 500986, at *3 (W.D.N.Y. Jan. 30, 2020) (internal brackets omitted), and a "medical opinion may be stale if it does not account for the claimant's deteriorating condition." *Id.*  "However, a medical opinion is not necessarily stale simply based on its age.  A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age." *Id.* (collecting cases).  Indeed, an opinion is not automatically stale even if the claimant subsequently undergoes surgery; the relevant question is whether the claimant's condition has materially changed.  *See, e.g.*, *Stover v. Saul*, No. 18-CV-404, 2020 WL 897411, at *7 (W.D.N.Y. Feb. 25, 2020) (opinion not stale despite claimant's subsequent surgeries, where the surgeries "did not change [the claimant's] conditions"); *Prise v. Comm'r of Soc. Sec.*, No. 18-CV-220, 2019 WL 2491667, at *5 (W.D.N.Y. June 14, 2019) ("Even though the opinion pre-dated Plaintiff's last cervical surgery, there was no indication that Plaintiff's condition had significantly deteriorated after the consultative exam.").

In this case, there were reasonable grounds to conclude that Oliver's condition had not significantly changed after her surgery, and, therefore, that Dr. Bijpuria's opinion had not been rendered stale.  As Dr. Bijpuria observed, Oliver had not sought or received treatment for her left arm in 2015 or much of 2016.  Although Oliver sustained an acute neck and left-arm condition in late 2016, she underwent surgery that, in her own words, improved her condition.  *See* Tr. 650.

Thus, because Oliver's condition did not deteriorate after her acute injury and surgery, the ALJ could reasonably find Dr. Bijpuria's opinion on her pre-surgery condition to be consistent with her post-surgery condition, and could therefore reasonably rely upon it.[2] *See Beyers v. Comm'r of Soc. Sec.*, No. 18-CV-819, 2020 WL 362802, at *5 (W.D.N.Y. Jan. 21, 2020) (opinion not stale where claimant "recovered well" from later surgery).

Accordingly, Oliver's argument does not warrant remand.

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED and Oliver's Motion for Judgment on the Pleadings (ECF No. 8) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 10, 2020
       Rochester, New York

                           HON. FRANK P. GERACI, JR.
                           Chief Judge
                           United States District Court

---

[2] Oliver argues that her cervical surgery was not successful, pointing out that her hearing testimony "reflects that she [has] continued to suffer significant limitations as a result of her cervical spine impairment," and that physical therapy has not helped. ECF No. 8-1 at 23-24. At most, the contrary evidence Oliver cites created a conflict in the evidence, one which the ALJ reasonably resolved. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("In our review, we defer to the Commissioner's resolution of conflicting evidence.").

Additionally, Oliver notes in passing that later diagnostic imaging revealed the "presence of hip arthritis," ECF No. 8-1 at 23, but she fails to meaningfully develop an argument—or cite competent medical evidence to show—that this arthritis caused her condition to deteriorate. *See Lesanti*, 2020 WL 500986, at *3.